**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KENNETH GOLANOSKI,<br><br>        Plaintiff,<br><br>        v.<br><br>SUNWORKS, INC., CHARLES F. CARGILE, DANIEL GROSS, JUDITH HALL, RHONE RESCH, STANLEY SPEER,<br><br>        Defendants. | Case No.: 20-cv-8732<br><br>JURY TRIAL DEMANDED<br><br>**<u>AMENDED COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS</u>** |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## **BACKGROUND**

1. This action concerns a proposed transaction announced on August 10, 2020 pursuant to which Sunworks, Inc. ("SUNW" or the "Company") will be acquired by The Peck Company Holdings, Inc. ("Parent") and Peck Mercury, Inc. ("Merger Sub," and together with Parent, "Peck").

2. On August 10, 2020, the Board of Directors of SUNW (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") in an all-stock deal, pursuant to which SUNW shareholders will receive 0.185171 of a share of Parent common stock for each share of SUNW common stock they own (the "Merger Consideration").

3. On October 15, 2020, in order to convince SUNW's stockholders to vote in favor of the Proposed Transaction, Defendants filed a materially incomplete and misleading proxy

statement (the "Proxy") with the United States Securities and Exchange Commission ("SEC").

4. The Proxy omits material information with respect to the Proposed Transaction, which renders the Proxy false and misleading. Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy.

5. In addition, a special meeting of SUNW's stockholders will be held virtually on November 12, 2020, at 9:00 a.m., Pacific Time, to vote on the Proposed Transaction (the "Stockholder Vote"). It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the Stockholder Vote so SUNW stockholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

## JURISDICTION & VENUE

6. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7. This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received substantial

compensation in this District by doing business here and engaging in numerous activities that had an effect in this District. Additionally, the Company's common stock trades on the NASDAQ, which is headquartered in this District.

## THE PARTIES

9. Plaintiff is, and has been continuously throughout all times relevant hereto, a SUNW shareholder.

10. Defendant SUNW is a Delaware corporation and a party to the Merger Agreement. SUNW shares are traded on the NASDAQ under the ticker symbol "SUNW."

11. Defendant Charles F. Cargile is Chief Executive Officer and Chairman of the Board of the Company.

12. Defendant Daniel Gross is a director of the Company.

13. Defendant Judith Hall is a director of the Company.

14. Defendant Rhone Resch is a director of the Company.

15. Defendant Stanley Speer is a director of the Company.

## FACTS

16. SUNW is a premier provider of high-performance solar power systems. SUNW continues to grow its presence, expanding nationally with regional and local offices. SUNW has customers in a wide range of industries including agricultural, commercial and industrial, state and federal, public works, and residential. SUNW is a member of the Solar Energy Industries Association (SEIA) and is a proud advocate for the advancement of solar power.

17. Peck is one of the largest commercial solar engineering, procurement and construction companies in the country and is expanding across the Northeastern United States. Peck is a second-generation family business founded under the name Peck Electric Co. in 1972 as a

traditional electrical contractor. Peck has a three-pronged growth strategy that includes (1) organic expansion across the Northeastern United States, (2) conducting accretive merger and acquisition transactions to expand geographically, and (3) investing into company-owned solar assets.

18. On August 10, 2020, SUNW's Board caused the Company to enter into the Merger Agreement. The Merger Agreement provides Merger Sub will merge with and into Sunworks, with Sunworks surviving the Merger and becoming a wholly-owned subsidiary of Parent.

19. At the Effective Time (as defined in the Merger Agreement), and as a result of the Merger:

> Each share of Sunworks Common Stock that is issued and outstanding immediately prior to the Effective Time will be converted into the right to receive 0.185171 shares of Peck Common Stock (subject to certain adjustments set forth in the Merger Agreement) (the "Exchange Ratio"), and, if applicable, cash in lieu of fractional shares, less any applicable withholding taxes.

20. The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's unitholders will receive in connection with the Proposed Transaction.

21. It is therefore imperative that the Company shareholders receive the material information that Defendants have omitted from the Proxy so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

22. Section 5.04 of the Merger Agreement has a "no solicitation" clause that prevents SUNW from soliciting alternative proposals and constrains its ability to negotiate with potential buyers:

> SECTION 5.04 No Solicitation.
>
> (a) Takeover Proposal. Neither the Company, on the one hand, nor Parent, on the other hand, shall, and each shall cause their respective Subsidiaries not to, and shall not authorize or permit its or its respective Subsidiaries' directors, officers,

employees, investment bankers, attorneys, accountants, consultants, or other agents or advisors (with respect to any Person, the foregoing Persons are referred to herein as such Person's "**Representatives**") to, directly or indirectly, solicit, initiate, or knowingly take any action to facilitate or encourage the submission of any Takeover Proposal or the making of any proposal that could reasonably be expected to lead to any Takeover Proposal, or, subject to Section 5.04(b): (i) conduct or engage in any discussions or negotiations with, disclose any non-public information relating to the Company or Parent or any of their respective Subsidiaries to, afford access to the business, properties, assets, books, or records of the Company or Parent or any of their respective Subsidiaries to, or knowingly assist, participate in, facilitate, or encourage any effort by, any third party (or its potential sources of financing) that is seeking to make, or has made, any Takeover Proposal; (ii) (A) except where the Company Board or Parent Board, as applicable, makes a good faith determination, after consultation with outside legal counsel, that the failure to do so would be inconsistent with its fiduciary duties, amend or grant any waiver or release under any standstill or similar agreement with respect to any class of equity securities of the Company or Parent, as applicable, or any of their respective Subsidiaries, or (B) approve any transaction under, or any third party becoming an "interested stockholder" under, Section 203 of the DGCL; or (iii) enter into any agreement in principle, letter of intent, term sheet, acquisition agreement, merger agreement, option agreement, joint venture agreement, partnership agreement, or other Contract relating to any Takeover Proposal (each, an "**Acquisition Agreement**"). Except as expressly permitted by this Section 5.04, neither the Company Board shall effect a Company Adverse Recommendation Change, nor shall the Parent Board effect a Parent Adverse Recommendation Change. The Company on the one hand, and Parent, on the other hand, shall, and shall cause their respective Subsidiaries to cease immediately and cause to be terminated, and shall not authorize or knowingly permit any of its or their Representatives to continue, any and all existing activities, discussions, or negotiations, if any, with any third party conducted prior to the date hereof with respect to any Takeover Proposal.

23. In addition, Section 7.06 of the Merger Agreement requires SUNW to pay up to a $375,000.00 "breakup fee" in the event this agreement is terminated by SUNW and improperly constrains the Company from obtaining a superior offer. Such a termination fee is excessive and unduly restrictive to SUNW's ability to consider other offers.

24. Defendants filed the Proxy with the SEC in connection with the Proposed Transaction.

25. As alleged herein, the Proxy omits material information with respect to the Proposed Transaction, which renders the Proxy false and misleading.

5

26. First, the Proxy omits SUNW's and Peck's financial projections.

27. The disclosure of projected financial information is material information necessary for stockholders to gain an understanding of the basis for any projections as to the future financial performance of the combined company. In addition, this information is material and necessary for stockholders to understand the financial analyses performed by the companies' financial advisors rendered in support of any fairness opinion.

28. Second, the Proxy omits material information regarding the analyses performed by SUNW's financial advisor, Holthouse Carlin & Van Trigt LLP ("HCVT") in connection with the Proposed Transaction.

29. With respect to HCVT's *Selected Public Company Analysis*, the Proxy fails to include: (i) all the individual metrics and the bases for the metrics, if any, for each company observed and (ii) the outlier companies excluded by HCVT. This information must be disclosed to make the Proxy not materially misleading to SUNW stockholders and provide stockholders with full and relevant information in considering how to vote.

30. With respect to HCVT's *Selected Precedent M&A Transactions Analysis*, the Proxy fails to disclose (i) all the individual metrics and the bases for the metrics, if any, for each company observed and (ii) the outlier transactions excluded by HCVT. This information must be disclosed to make the Proxy not materially misleading to SUNW stockholders and provide stockholders with full and relevant information in considering how to vote.

31. With respect to HCVT's *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the financial projections of SUNW for years 2020 through 2025, including each year of unlevered free cash flow and the underlying line items; (ii) the individual inputs and assumptions underlying the discount rates ranging from 11.0% to 13.0%; and (iii) HCVT's basis for applying an EBITDA

exit multiple ranging from 4.0x to 5.0x. This information must be disclosed to make the Proxy not materially misleading to SUNW stockholders and provide stockholders with full and relevant information in considering how to vote.

32. Third, the Proxy omits material information regarding HCVT.

33. The Proxy fails to disclose the amount of HCVT's fee that is contingent upon the consummation of the Proposed Transaction.

34. While the Proxy confirms HCVT did not perform past service for Peck, the Proxy fails to disclose whether HCVT has performed past services for the Company or its affiliates, and if so, the timing and nature of such services and the amount of compensation received by HCVT for providing such services.

35. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

36. Fourth, the Proxy also omits details explaining how the directors and officers of SUNW have interests in the Merger that may be different from, or in addition to, the interests of SUNW stockholders generally and that may present actual or potential conflicts of interest, including but not limited to, what officers of SUNW may continue their employment with Peck after the Merger. Employment offers and negotiations regarding post-transaction employment during the negotiation of the merger transaction must be disclosed to stockholders.

37. The omission of the above-referenced material information renders the Proxy false and misleading.

38. The above-referenced omitted information, if disclosed, would significantly alter the

total mix of information available to the Company's stockholders.

## CLAIMS FOR RELIEF

### COUNT I

### (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)

39. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

41. Defendants issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

42. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such

8

information to stockholders as required.

43. The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Proxy. Defendants were also negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully.

44. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

**COUNT II**

**(AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)**

45. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or

shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy.

49. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52. Plaintiff has no adequate remedy at law.

# PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

# JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: October 21, 2020

**MOORE KUEHN, PLLC**

*/s/Justin Kuehn*
Justin A. Kuehn
Fletcher W. Moore
30 Wall Street, 8th floor
New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com

*Attorneys for Plaintiff*